FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y

★ DEC 20 2012 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
GRANITE COMMERCIAL INDUSTRIES, LLC
d/b/a/ GRANITE INDUSTRIES, INC. &
GRANITE MFG. STONEWORKS, LLC.

                Plaintiff,

- against -

LANDMARK AMERICAN INSURANCE
COMPANY,

                Interpleader-Plaintiff,

-against-

GRANITE COMMERCIAL INDUSTRIES, LLC
d/b/a/ GRANITE INDUSTRIES, INC. &
GRANITE MFG. STONEWORKS, LLC.,
BILL AND JOY, LLC., CIT SMALL BUSINESS
LENDING CORP., INTERNAL REVENUE
SERVICE, UNITED STATES GOVERNMENT
DEPARTMENT OF THE TREASURY, NEW
YORK STATE DEPARTMENT OF TAXATION
AND FINANCE, DOMINIC SERIO and IRWIN
COMMERCIAL FINANCE CORPORATION,
EQUIPMENT FINANCE,

                Interpleader-Defendants.

------------------------------------X

MEMORANDUM AND ORDER
CV 10-2084 (LDW)

APPEARANCES :

        CLAUSEN MILLER, P.C.
        BY: JACOB ROYAL ZISSU, ESQ.
        Once Chase Manhattan Plaza
        New York, New York 10005
        Attorneys for Landmark American Insurance Company

        JULIE C. AVETTA, ESQ., ASSISTANT UNITED STATES ATTORNEY
        UNITED STATES DEPARTMENT OF JUSTICE

1

TAX DIVISION
P.O. BOX 55 Ben Franklin Station
Washington, D.C. 20044
Attorney for the Internal Revenue Service of the
Department of the Treasury, United States of America

CHARLES G. EICHINGER & ASSOCIATES, P.C.
BY: CHARLES G. EICHINGER, ESQ.
One Suffolk Square Suite 510
1601 Veterans Memorial Highway
Islandia, New York 11749
Attorneys for Granite Commercial Industries, LLC.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
BY: MARK G. LEDWIN, ESQ.
3 Gannett Drive
White Plains, New York 10604
Attorneys for CIT Small Business Lending Corporation

FALLON & FALLON, LLP.
BY: DAVID P. FALLON, ESQ.
53 Main Street
Sayville, New York 11782
Attorneys for Bill and Joy, LLC.

LORI PECK, ESQ. ASSISTANT ATTORNEY GENERAL
OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL
300 Motor Parkway Suite 205
Hauppauge, New York 11788
Attorney for the New York State Department of Taxation and Finance

PICCIANO & SCAHILL, P.C.
BY: FRANCIS JARLATH SCAHILL, ESQ.
900 Merchants Concourse, Suite 310
Westbury, New York 11590
Attorneys for Dominic Serio

WEXLER, District Judge:

This action was commenced in the Supreme Court of the State of New York, County of

Suffolk, by Plaintiff Granite Commercial Industries, LLC ("Granite") against its insurer,

Defendant Landmark American Insurance Company ("Landmark"). The action was thereafter removed by Landmark on the ground of diversity of citizenship (the "Removed Action"). After removal, the Removed Action was settled in the amount of $125,000. Payment to Granite was not made by Landmark because it learned of Granite's possible financial obligations to several creditors. Accordingly, after discontinuance of the Removed Action, Landmark served third-party and amended third-party complaints for interpleader seeking to determine the priority of entitlement to the settlement proceeds of the Removed Action.

Presently before the court are the cross-motions for summary judgment of interpleader-defendants Granite and CIT Small Business Lending Corp. ("CIT"). Each seeks to establish the priority of its lien.[1]

## BACKGROUND

### I. Prior Proceedings and the Claims at Issue

In the context of the Removed Action, Granite sought $812,000 as coverage for losses incurred in connection with vandalism of the Equipment, and as damages for business interruption. As noted, the Removed Action was settled in the amount of $125,000, but payment to Granite was not made because of the presence of competing claims of Granite's creditors. Accordingly, after discontinuance of the Removed Action, Landmark served an amended complaint for interpleader. The interpleader seeks to determine the priority of entitlement to the

---

[1] Although the United States and the State of New York have asserted liens for unpaid taxes, both entities have disclaimed any interest in the interpleaded fund in favor of CIT. Interpleader defendants Dominic Serio, and Bill and Joy, LLC have similarly disclaimed any interest in the funds in favor of the claim of CIT. Interpleader defendant Irwin Commercial Finance Corporation was served, but has not appeared herein.

$125,000 Landmark agreed to pay Granite in settlement of the Removed Action, which amount has been deposited with the Clerk of this Court (the "Fund"). The court discusses below the two competing claims that are before the court

### A. The Granite Claim

Granite is pursuing a claim on behalf of its counsel for fees stated to be due to attorney Charles Eichinger. That claim arose on March 9, 2009, when Michael Eichinger, acting on behalf of Granite, retained Charles Eichinger (Michael Eichinger's father), to prosecute or adjust Granite's claim for damages against Landmark. The retainer agreement provides that in consideration for the legal services rendered, Charles Eichinger would be entitled to retain 40% of any amount recovered on the claim, whether by judgment, settlement or otherwise. The lien asserted herein is approximately $50,000, which is approximately 40% of the amount agreed to be paid in settlement of the Removed Action.

### B. The CIT Claim

CIT's claim to the Fund arises out of a loan it made to Granite in April of 2002, in the amount of $825,000, (the "CIT Loan"). The CIT Loan was made under a guaranteed loan program administered by the United States Small Business Administration. There is no question but that the greater part of the CIT Loan was used to purchase the Equipment. In connection with the Loan, Granite executed a promissory note (the "Note") and a security agreement (the "Security Agreement"). The Security Agreement grants CIT a blanket first priority security interest in Granite's "Collateral." Collateral, as set forth in the Security Agreement, is defined broadly to include all, inter alia, all of Granites' business assets, including equipment purchased with the proceeds of the Loan. The Security Agreement requires Granite to keep the Collateral

4

insured, with losses payable to CIT. The Security Agreement provides further that "all amounts received by [Granite] in payment of insurance losses . . . may, at [CIT's] option be applied" to Granite's indebtedness to CIT. CIT perfected its security interest by the filing of a UCC-1 financing statement with the New York State Department of State on March 11, 2002. CIT thereafter renewed its security interest by the filing of UCC-3 continuation statements on February 20, 2007, and February 6, 2012.

In July of 2008, Granite defaulted under the terms of the CIT Loan and shortly thereafter went out of business. CIT asserts that it attempted to take possession of the Equipment that was located on Granite's premises, but was unable to do so before it became damaged or was stolen. In February of 2009, CIT commenced a foreclosure action against Granite in New York State Supreme Court, County of Nassau. That action sought foreclosure on mortgages as well as personal guarantees granted to CIT, including the personal guarantees of Michael Eichinger, as CEO of Granite, and his wife, and Jenna Eichinger. On August 29, 2011, CIT's motion for summary judgment in the foreclosure action was granted. CIT thereafter entered into a settlement with Dominic Serio and William Haberman – two of Granite's former principles. That settlement left a balance of approximately $267,000 due to CIT on the Loan. Michael and Jenna Eichinger reached no settlement with CIT and have filed for Chapter 7 bankruptcy protection.

CIT has submitted a letter from Charles Eichinger, the attorney seeking to enforce the lien in this matter, to the adjuster working on Granite's insurance claim. That letter is dated February 4, 2009, and makes reference to the interest of CIT in the proceeds of the insurance claim. Specifically, the letter notes that the insurance adjuster was "also informed that the SBA [Small Business Administration] has a first security interest in this equipment which is CIT Small

Business Lending Corporation."

## DISCUSSION

I.  Standards on Summary Judgment

The standards for summary judgment are well settled. Rule 56(c) of the Federal Rules of Civil Procedure 56(c), states that summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Reiseck v. Universal Commc'ns of Miami, Inc., 591 F.3d 101, 104 (2d Cir. 2010). Neither party raises the argument that summary judgment is inappropriate here because of the presence of issues of fact. Importantly, neither party challenges the propriety or amount of the other party's lien. Instead, the question before the court is strictly a matter of determining the priority, as a matter of law, of the competing liens. The court turns then to discussion of that single dispositive issue.

II.  Legal Priority of the Claims

The attorneys' charging lien asserted by Granite is argued to exist by virtue of Section 475 of the New York State Judiciary Law ("Section 475"). That section creates a lien in favor of an attorney who appears for a party upon a claim, and attaches to a "verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come." N.Y. Jud. L. §475. A lien is created pursuant to Section 475 only if an attorney has appeared in an action that creates, or is the source of the funds against which the lien is asserted. Weg and Myers, P.C. v. Banesto Banking Corp., 572 N.Y.S.2d 321, 323 (1st Dep't. 1991). It is clear to the court that Charles Eichinger's representation in the

Removed Action was sufficient to create a Section 475 Charging Lien.

CIT's lien exists by virtue of the Security Agreement, and is governed by Article 9 of the Uniform Commercial Code (the "UCC"). As noted, CIT perfected its security interest in the Security Agreement by filing its UCC-1 and renewals thereof. Section 9-306 sets forth the law governing the perfection and priority of security interests. When deciding issues of priority, it is the law of the State of New York that applies. N.Y.U.C.C. 9-301(a)(b) (providing for the law of the state in which the debtor or collateral is located to govern issues of perfection and priority of security interests in collateral).

New York law provides that proceeds from an insurance policy are included within the definition of secured collateral. See PPG Industries, Inc. v. Hartford Fire Ins. Co., 531 F.2d 58, 61 (2d Cir. 1976). This is undoubtedly true here, where the perfected Security Agreement provides specifically that the debtor is to keep Collateral insured, with loss payable clauses made in favor of CIT as the secured party. Thus, the court concludes that CIT has a perfected security interest in the Fund.

When determining the issue of priority, the New York common law rule "first in time, first in right." Roberson v. Roberson, 846 N.Y.S.2d 528, 529 (4th Dep't 2007); Garrison Commercial Funding IV REO LLC v. NMP-Group LLC, 926 N.Y.S.2d 344 (N.Y. County 2011). An attorney's charging lien vests as of the commencement of the litigation on the client's behalf. Communications West, Inc. v. Board of Co-op. Educational Services of Sole Supervisory Dist. of Cattaraugus, Erie and Wyoming Counties (BOCES), 446 N.Y.S.2d 684, 685 (4th Dep't. 1981). Thus, the attorney charging lien here vested upon commencement of the Removed Action in 2010. CIT asserts that its security interest in Granite's Collateral was perfected in 2002, years

before Granite commenced the Removed Action seeking payment for its claim arising from its stolen equipment. Therefore, it is argued that its claim has priority over the attorney's lien asserted by Granite, which arose only upon commencement of the Removed Action by Granite in 2010.

The priority of an attorney's charging lien is not necessarily determined only by comparing the dates of vesting of creditor's rights. Thus, in LMWT Realty Corp. v. Davis Agency Inc., 626 N.Y.S.2d 39 (1995), the New York Court of Appeals granted priority to an attorney's charging lien over an earlier-filed New York City tax lien. Id. There, as here, Plaintiff's attorney commenced a lawsuit to collect the proceeds of an insurance policy. When the case settled, the attorney sought to collect his contingency fee from the proceeds of the settlement. Reasoning that without the efforts of the attorneys, there would have been no proceeds for New York City to attach, the Court of Appeals, characterizing the attorney's lien as a "vested property right" in the client's property, was persuaded that "equitable considerations" required a holding that the attorney's lien for fees took precedence over the earlier created tax lien.

Contrary to the position taken by Granite, the court holds that despite the broad language in LMWT, the case does not stand for the proposition that an attorney's charging lien will always take precedence over other claims to the proceeds of a lawsuit. This was made clear by the New York Court of Appeals in Banque Indosuez v. Sopwith Holdings Corp., 745 N.Y.S.2d 754, 755 (2002). There, the Court of Appeals drew a distinction between cases involving claims emanating from the same transaction or instrument, and those arising from unrelated claims. Where the claims arise from unrelated matters, as was the case with the insurance proceeds and unrelated

8

tax liens in <u>LMWT</u>, the attorney's charging lien took precedence. <u>Banque Indosuez</u> 745 N.Y.S.2d at 759. On the other hand, where the claims arise from the same "transaction or instrument" or, as put by the Court of Appeals, "share a common origin," the attorney's charging lien is not afforded priority. <u>Id</u>. In such cases, the "balance of equities," allows competing claims to be according priority over an attorney's claim for fees.

While <u>Banque Indosuez</u> involved judgments arising out of a single lawsuit, the court is convinced that the facts here are closer to that case than <u>LMWT</u>, and that the equities here require affording precedence to the claim of CIT. Supportive of the court's holding here is <u>Bank of India v. Weg and Myers, P.C.</u>, 257 A.D.2d 183, 691 N.Y.S.2d 439 (1st Dep't 199). There, as here, a lender asserting a claim as the holder of a prior perfected security interest in damaged collateral, sought to recover the proceeds of an insurance policy from the debtor's law firm. As here, the law firm was on both actual and constructive notice of the lender's claim prior to distribution of the funds. Noting the priority of the lender's perfected security interest, the court in <u>Bank of India</u> held that when the law firm exercised "unauthorized dominion" over the funds, it had converted the proceeds to its own benefit and that of its client. <u>Id</u>. at 191, 691 N.Y.S.2d at 445.

As in <u>Bank of India</u>, CIT had a prior perfected security interest in the Fund. Granite's attorneys had constructive and actual knowledge of that interest, even recognizing in writing CIT's priority. Despite any general language to the contrary in <u>LMWT</u>, the court holds that both <u>Bank of India</u> and <u>Banque Indosuez</u> compel the holding that the prior perfected security interest of CIT takes precedence over the attorney's charging lien in this matter.

## CONCLUSION

For the foregoing reasons, the court holds that the lien of CIT is entitled to priority. Accordingly, CIT's motions for summary judgment is granted and the motion of Granite is denied. The Clerk of the Court is directed to terminate the motions docketed as entries numbered 62, 67 and 71. CIT is directed to submit an appropriate order to this court regarding disbursement of the Fund. Upon such disbursement, the Clerk of the Court shall close the file in this matter.

SO ORDERED.

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Date: Central Islip, New York
      December   , 2012